MONICA L. MONTGOMERY SBN257286
Law Offices of Monica L. Montgomery
2667 Camino del Rio South Suite 301-12
San Diego, CA 92108
Telephone: (619) 255-1204
Facsimile: (619) 269-5810

Attorney for Plaintiff Dianne Loggins

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| DIANNE LOGGINS, an individual<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF SAN DIEGO HEALTH AND HUMAN SERVICES AGENCY - CHILD WELFARE SERVICES, DOES 1-50, Inclusive,<br><br>Defendants. | Case No.:   '13CV2615 JAH BLM<br><br>Case Classification: General Civil/Government Tort Liability<br><br>**COMPLAINT FOR DAMAGES:**<br><br>(1) Violation Civil Rights (42 U.S.C. § 1983)<br>(2) Breach of Contract ó Equal Opportunity Clause<br>(3) Intentional Infliction of Emotional Distress<br>(4) Interference with Prospective Economic Advantage<br>(5) Negligent Supervision<br>(6) Collusion<br><br>**DEMAND FOR JURY TRIAL** |

## JURISDICTION AND VENUE

Jurisdiction of this court is invoked under 28 U.S.C. §§1343(1), (2), (3), and (4). This action at law for money damages arises under 42 U.S.C. §1983, and the United States Constitution, the laws of the State of California, and common law principles to redress a deprivation of under color of state law of rights, privileges and immunities secured to Plaintiff by

said statutes, and by the Fourteenth Amendment of the United States Constitution. The acts complained of arise in this district and therefore venue lies in this District pursuant to 28 U.S.C. §1391.

## PARTIES

1. Plaintiff DIANE LOGGINS ("LOGGINS") is an individual and partial owner, along with husband Emmitt Loggins, of Kelloggs Care and Focus Group Home ("KELLOGGS"), a California licensed residential care facility for children who have been separated from their parents. LOGGINS carries two licenses through Community Care Licensing. KELLOGGS officially opened on June 28, 2002. The first Group Home Facility is located on Minoa Street in San Diego, California. The second Group Home Facility is located on Luber Street in San Diego, California, and opened on February 27, 2004.

2. LOGGINS is informed and believes, and on that basis alleges, that the County of San Diego Health and Human Services ("HHS") is a governmental agency that houses the Child Welfare Services Department. This County Department is charged with integrating health and social services through a unified service-delivery system. This system, according the County of San Diego website description, is supposed to be "family focused and community-based, reflective of business principles in which services are delivered in a cost-effective and outcome driven fashion."

3. Defendant Child Welfare Services Department's ("CWS") duty is to serve as an agent of protection for children who are without parents or guardians. Defendant CWS self-proclaimed mission is excellence in the delivery of culturally competent, family-centered and child-focused protective services.

4. Defendant CWS, is and at all times here mentioned has been a public entity duly authorized and existing as such in and under the laws of the State of California. Defendant CWS has possesses the power and authority to adopt policies and prescribe rules,

regulations and practices affecting the operation of CWS and other subdivisions presently unidentified to Plaintiff, and their tactics, methods, practices, customs and usages.

5. At all relevant times (including since at least November 2001), Defendant and DOES 1 through 50, were the agents, employees, investors, and/or co-conspirators of each of the remaining Defendants, and in doing the things alleged here, were acting in the course and scope of that agency and/or conspiracy and with the consent of each of their co-Defendants.

6. LOGGINS is ignorant of the true names and capacities of Defendants sued as DOES 1 through 50, inclusive, and therefore sues such Defendants as fictitious names. LOGGINS will amend this complaint to identify any Defendants by their true names and capacities when and if LOGGINS has ascertained them. LOGGINS is informed and believes, and on that basis alleges, that each of the fictitiously named Defendants are tortiously or otherwise legally responsible in some manner for the occurrences alleged in this complaint, and that LOGGINSødamages were proximately caused thereby.

## **STATEMENT OF FACTS**

7. LOGGINS alleges discriminatory practices by the County of San Diego (more specifically the Defendant CWS) and DOES 1-3 because since the inception of the licensing procedures, the County of San Diego and DOES 1-3 refused to cooperate with LOGGINS, resulting in unjustifiable disparate treatment. LOGGINS was denied equal access and equal treatment because of her race and age, as explained herein.

8. This complaint stems from 12 years of unequal treatment by the County of San Diego and DOES 1-3, and the removal of four clients from a KELLOGGS group home on October 28, 2011. No notice was given for the arbitrary removal of clients to LOGGINS, any other

representative of KELLOGGS, or the clients, which is required under the County's own regulations (attached hereto as Exhibit 1).

9. LOGGINS applied for a license with the State of California Community Care Licensing in 2001 to operate and maintain a group home for the sole purpose of serving the population of six male residents between the ages of 12-17.

10. LOGGINS performed all requirements by the State to obtain a license as of December 1, 2001, but needed a letter of support from County of San Diego to begin operation of a group home in San Diego.

11. On or about December 14, 2001, LOGGINS was denied a county support letter by the county via telephone conversation because the county representative alleged "there was no need for level 10 facility at [that] time." LOGGINS is informed and believes, and on that basis alleges that in 2001, at least 90,000 children were in need of placement in group homes in California and that there were nearly 250,000 reports of suspected abuse in the year 2000.

12. LOGGINS, based on this denial, pursued the appeal process, although no formal denial was sent to LOGGINS or KELLOGGS. After a meeting with County Counsel and approximately 5 representatives from the State of California on January 3, 2002, KELLOGGS was finally issued a county support letter on June 28, 2002.

13. Since completing the licensing process through the State of California in November 2001, and receiving a County Letter of Support to operate a group home in the County of San Diego, KELLOGGS was required to enter into the County Agreement ("Agreement") to receive services from the County in its endeavor to run a successful group home. KELLOGGS was required to renew this Agreement every year (attached as Exhibit 2).

14. This Agreement includes an Equal Opportunity clause as well as a Non-Discrimination clause.

15. On March 26, 2003, LOGGINS was pursued by San Diego County representative Tammy Burmeister to start another group home based on the success of the first.

16. In the County Letter of Support for the second group home dated March 26 2003, Betsy Gross, who was the Chief of Residential Services in 2003, stated there was a õtremendous need for Licensed Group Home beds for teen males and have numerous children waiting for Licensed Group Home placements. Many of these minors are languished in detention beds, as there are not enough Licensed Group Home beds available for them.ö

17. KELLOGGS opened its second group home, with valid license, on February 27, 2004.

18. Although CWS, by its own admission, stated there was a severe need for safe and professional group homes, KELLOGGS did not receive an adequate number of referrals from the County of San Diego. KELLOGGS received 22 referrals resulting in 13 placements for the entire year of 2006. Each year thereafter, the number of referrals significantly decreased until the four clients were arbitrarily removed from the group home on October 28, 2011. LOGGINS is informed, believes and on that basis alleges that the number of referrals she received was below the county average.

19. KELLOGGS continued to seek referrals from other agencies such as the San Diego Regional Center, the San Diego Probation Department, El Centro County Probation and Riverside County.

20. LOGGINS received a letter from the San Diego Regional Center in November 2009 notifying her that the application for vendorization had been approved pending the submission of proof of insurance and executed agreements. However, shortly thereafter, the application was rejected. LOGGINS is informed and believes, and on that basis alleges that a County Representative gave false information to the San Diego Regional Center about the KELLOGGS group home violation, which did not exist, and lack of paperwork. LOGGINS remained fully insured since she became licensed for both group homes.

21. Riverside County Placement Coordinator Daryl Griffith refused to work with KELLOGGS and stated, õIf the host county isnøt giving you any clients, then why should we give you clients?ö To date, LOGGINS license is valid and has been renewed. LOGGINS is informed, believes and on that basis alleges that California State Licensed Program Analyst Gloria Cruz gave false information to Mr. Griffith which resulted in KELLOGGS loss of contract with Riverside County for placement and referrals.

22. LOGGINS is informed and believes, and on that basis alleges that the San Diego County Probation Department has not referred a client to KELLOGGS because of an unfounded recommendation of Defendant CWS.

23. On February 12, 2010, LOGGINS sent correspondence to Barry Fox, current Chief of Residential Services. The letter was in reference to the lack of referrals for KELLOGGS and addressed differential treatment of KELLOGGS as compared to other group homes similarly situated in the San Diego area.

24. On March 29, 2010, LOGGINS faxed a letter to San Diego County requesting referrals.

25. On November 30, 2010, LOGGINS faxed a letter to San Diego County requesting referrals.

26. After a meeting with Barry Fox on October 7, 2011, LOGGINS was informed that KELLOGGS would be receiving more referrals based on the positive evaluations and reviews of the group homes, and the fact that there were no violations.

27. On October 19, 21, and 27, 2011, KELLOGGS received client referrals; however, when placing calls to the social worker to begin the intake process, calls were not returned by County social workers.

28. LOGGINS is informed and believes, and on that basis alleges that Ms. Patty Danon, Assistant Deputy Director of CWS, recommended that social workers not return calls from KELLOGGS because she received a complaint about the allegation of racially motivated preferential treatment by Defendant CWS. As the Assistant Deputy Director, Ms. Danon is charged with assisting the deputy director in development and implementation of strategies, programs and activities in conjunction with Defendant CWS' mission and strategic plan for the County of San Diego.

29. On October 17, 2011, LOGGINS filed a complaint with Congressman Filner's office for adverse treatment with respect to client referrals and unfair business practices regarding the County of San Diego referral process.

30. The complaint was filled out per the Congressional Office "Casework Form." Shortly thereafter, Congressman Filner's office contacted the County of San Diego Supervisor Ron Roberts, because both KELLOGGS group homes were within his jurisdiction and district.

31.  On October 25, 2011 Ms. Danon called KELLOGGS and spoke to the administrator, Troy Loggins. She stated she was coming to visit KELLOGGS on the morning of October 26 because she had never visited the facility.

32.  Ms. Danon arrived at the Luber Street KELLOGGS facility at 9:30am on October 26, 2011. She arrived with Chief Compliance Officer Robert Borntrager and James Salazar, County Monitor for KELLOGGS. Just before leaving the facilities, Ms. Danon asked Mr. Borntrager, õDid you find anything?ö Mr. Borntrager shrugged his shoulders and said, õNo.ö Based on this conversation, LOGGINS is informed, believes and that basis alleges that Ms. Danon visited for the sole purpose of finding violations in the group home to use against the LOGGINS in justifying her later actions.

33.  Additionally, Mr. Borntrager visited the group home located on Minoa Street and asked to review the files from previous clients. KELLOGGSøadministrator made an appointment with Mr. Borntrager to review the files on November 3, 2011, since the files from 3 years back were at the corporate office. The corporate office is the home of Emmitt and Dianne LOGGINS, who were out of town on October 26, 2011.

34.  Ms. Danon called Administrator on the evening of October 26, 2011, after she had visited the Luber Street Group Home that morning, insisting that the files be reviewed on October 27, 2011.

35.  KELLOGGSø Administrator complied with the request and made the appointment on October 27, 2011 with County Monitor James Salazar at 3pm. While retrieving files from the corporate office, Administrator noticed Ms. Danon sitting in a car parked outside of the corporate office. Ms. Danon was slumped in the seat with sunglasses on, performing surveillance on the property.

36. KELLOGGS administrator approached Ms. Danon to ask why she was there and to make sure she was informed about the meeting to be held at Luber Street Group Home for the purpose of reviewing the files. Ms. Danon insisted on seeing the files immediately, although previous arrangements had been made with compliance officer. County Monitor James Salazar did not keep the appointment made on October 27, 2011 at 3pm.

37. LOGGINS is informed and believes, and on that basis alleges that Ms. Danon and two additional San Diego County Personnel were standing outside of the corporate office on the evening of October 27, 2011. As LOGGINS was out of town with her husband Emmitt Loggins, no one was available at the corporate office. Moreover, business hours of the corporate office hours are 8am-5pm.

38. On October 28, 2011, four clients were removed from KELLOGGS group home at approximately 7am. LOGGINS is informed and believes, and on that basis alleges social workers were directed by Ms. Danon to arbitrarily remove clients from KELLOGGS group home. All actions by Ms. Danon were done under the guise and title of County of San Diego Deputy Director of Child Welfare Services.

39. David Salinas, County Social Worker for one of the clients, stated, "We don't know what is going on, this was ordered by administration. KELLOGGS always did a good job with my kids and [you] always got the most difficult kids."

40. LOGGINS received letter dated November 1, 2011 regarding the reason for termination of the Agreement with the County of San Diego. The letter stated "Termination for Convenience" as the reason for removal of the clients from the KELLOGGS Group Home.  Pursuant to the Agreement, Termination for Convenience requires 90 day notice.

41. Clients were removed in spite of County Residential Services policy that "unplanned placement changes may be detrimental and traumatic to a child or adolescent." County is required to give clients 10 day notice per their own policy/regulations. No notice was given to LOGGINS, KELLOGGS or clients.

42. LOGGINS is informed and believes, and on that basis alleges that the State of California Community Care Licensing Department was notified after clients were removed, and not before, just as LOGGINS was notified of the termination of the agreement after clients were removed.

43. On October 31, 2011, the State of California Community Care Licensing visited the group home site where the clients were removed because of a complaint filed against KELLOGGS. There were no clients in the home at the time of this unannounced visit.

44. There was one violation found, "Medication Improperly Labeled." More specifically, "the bubble pack was not labeled appropriately with the client's name" On April 26, 2011, KELLOGGS annual review received the highest rating on 194 of 196 categories, and held the second highest ranking on 2 of 196 categories.

45. LOGGINS requested a hearing, pursuant to state law (Welfare and Institutions Code) and County Regulations within 90 days of the removal of clients.

46. LOGGINS was informed that no hearing would be conducted.

## FIRST CAUSE OF ACTION AGAINST DEFENDANT CWS AND DOES 1-50
### 42 U.S.C. §1983 VIOLATION OF CIVIL RIGHTS (DUE PROCESS)

47. LOGGINS repeats, realleges, and incorporates by reference each and every allegation contained in paragraphs 1 through 46 above as if fully set forth here against Defendant CWS and DOES 1-3.

48. This action at law for damages arises under 42 U.S.C. 1983 and the United States Constitution to redress a deprivation under color of state law of rights, privileges and immunities secured to Plaintiffs by said statutes and by the Fourteenth Amendment of the United States Constitution.

49.  At the aforementioned dates and places, Defendants CWS and DOES 1-50, and each of them, did without cause or justification and acting under color of law, intentionally and maliciously deprive LOGGINS of rights secured to her by the Fourteenth Amendment of the United States Constitution.

50. As a proximate result of the aforesaid acts and omissions of efendants, and each of them, Plaintiff sustained great financial loss and mental pain, resulting in anxiety, torment and emotional distress.

51. By reason of the aforementioned acts and omissions of Defendant, Plaintiff was compelled to secure the services of an attorney at law to redress the wrongs herein before mentioned and by virtue thereof, Plaintiff is indebted and liable for attorneys fees.

52. The aforementioned acts and omissions of Defendant were committed knowingly, willfully and maliciously, with the intent to harm, injure, vex, harass and oppress Plaintiff with a conscious disregard of Plaintiff's constitutional rights and by reason thereof, Plaintiff seeks punitive and exemplary damages from Defendant in an amount as proved.

## SECOND CAUSE OF ACTION AGAINST DEFENDANT CWS

## BREACH OF CONTRACT – EQUAL EMPLOYMENT CLAUSE AND TERMINATION FOR CONVENIENCE

53. LOGGINS repeats, realleges, and incorporates by reference each and every allegation contained in paragraphs 1 through 53 above as if fully set forth here against Defendant CWS.

54. As mentioned in paragraph 13 of this complaint, LOGGINS entered into an Agreement with the County of San Diego Health and Human Services Child Welfare Services for the purpose of operating a group home in the County of San Diego.

55. The equal opportunity clause of the agreement reads as follows, the County

> *"will not discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment; or discriminate in any way which would deprive any individual of employment opportunities or otherwise adversely affect his or her status as an employee because of such individual's race, color, religion, sex, national origin, age, handicap, or medical condition or marital status."*

LOGGINS is informed and believes, and on that basis alleges that Defendant CWS has violated this clause by performing the above mentioned conduct.

56. Section 27 of the Agreement states that a 90 day notice for "termination for convenience" is required before termination can occur. All clients were removed from LOGGINS group home on October 28, 2011, notice of termination for convenience was given on or about November 3, 2011. Pursuant to the Agreement, notice should have been given on August 28, 2011 if Defendant CWS planned to remove clients on October 28, 2011. The termination was not for cause. Defendant CWS is in violation of Section 27 of the Agreement prepared by the County of San Diego. (See Exhibit 2.)

57. As a direct, foreseeable and proximate result of the above mentioned actions by Defendants, and each of them, LOGGINS has suffered, and continues to suffer, losses in earnings, earning capacity and other benefits of employment, in an amount to be determined. LOGGINS seeks specific performance of the Agreement set forth here and injunctive relief per the terms of the Agreement. LOGGINS will seek leave of court to amend this complaint to allege the exact amount of such damages, or to conform to proof at trial.

58. LOGGINS is informed and believes, and on that basis alleges that Defendants engaged in other actionable conduct not enumerated by this complaint. LOGGINS will seek leave of court to amend this complaint to allege the additional specific facts when those facts become known to her, or to conform to proof at trial.

## THIRD CAUSE OF ACTION AGAINST DEFENDANTS CWS AND DOES 1-50
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

59. LOGGINS repeats, realleges, and incorporates by reference each and every allegation contained in paragraphs 1 through 59 above as if fully set forth here against Defendant CWS and DOES 1-3.

60. The conduct of Defendant as set forth in this complaint was extreme and outrageous to a degree as to be outside the bounds of decency in a civilized society. LOGGINS is informed and believes, and on that basis alleges that the standard for a governmental agency which is charged with the responsibility of attending to the needs of orphan children should be high, and the conduct herein is disgraceful and despicable for the County of San Diego.

61. When CWS came to remove the clients on October 28, 2011, one client yelled at LOGGINS, saying, "Why are we leaving? You don't want us anymore? I thought you said we could trust you!" This has caused emotional distress and mental anguish to LOGGINS.

62. The conduct of Defendant was done in reckless disregard and with the very intention to cause emotional distress to LOGGINS.

63. As a result of Defendant's extreme and outrageous conduct, LOGGINS has suffered, and continues to suffer severe emotional distress and mental anguish.

64. The severe emotional distress and mental anguish that LOGGINS has suffered, and continues to suffer, was actually and proximately caused by Defendant's extreme and outrageous conduct as set forth here.

65. As a direct, foreseeable and proximate result of the above mentioned actions by Defendants, and each of them, LOGGINS has suffered, and continues to suffer, losses in earnings, earning capacity and other benefits of employment, in an amount to be determined. LOGGINS will seek leave of court to amend this complaint to allege the exact amount of such damages, or to conform to proof at trial.

66. The acts of Defendants were done with malice, fraud and oppression, and with conscious disregard for LOGGINS rights. Therefore, Defendant's actions entitle LOGGINS to punitive and exemplary damages in an amount sufficient to discourage such future actions of Defendants and others, and according to proof at trial.

## FOURTH CAUSE OF ACTION AGAINST DEFENDANTS CWS AND DOES 1-50

## INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

67. LOGGINS repeats, realleges, and incorporates by reference each and every allegation contained in paragraphs 1 through 66 above as if fully set forth here against Defendant CWS and DOES 1-3.

68. LOGGINS received a letter from the San Diego Regional Center in November 2009 notifying her that the application for vendorization had been approved pending the submission of proof of insurance and executed agreements. However, shortly thereafter, LOGGINS is informed and believes, and on that basis alleges that a County Representative gave false information to the San Diego Regional Center about the KELLOGGS group home violation and lack of paperwork and the application was rejected.

69. LOGGINS is informed and believes, and on that basis alleges that Defendant CWS intentionally interfered with KELLOGGS contractual agreements with other organizations such as the San Diego Regional Center, Riverside County and El Centro Probation Department.

70. As a direct, foreseeable and proximate result of the above mentioned actions by Defendants, and each of them, LOGGINS has suffered, and continues to suffer, losses in earnings, earning capacity and other benefits of employment, in an amount to be determined. LOGGINS will seek leave of court to amend this complaint to allege the exact amount of such damages, or to conform to proof at trial.

71. As a proximate result of Defendant's willful, knowing and intentional acts, LOGGINS has suffered, and continues to suffer humiliation, emotional distress and mental and physical pain and anguish, all to her damage, in an amount according to proof at trial.

72. The acts of Defendants were done with malice, fraud and oppression, and with conscious disregard for LOGGINS rights. Therefore, Defendant's actions entitle LOGGINS to punitive and exemplary damages in an amount sufficient to discourage such future actions of Defendants and others, and according to proof at trial.

73. LOGGINS is informed and believes, and on that basis alleges that Defendants engaged in other actionable conduct not enumerated by this complaint. LOGGINS will seek leave of court to amend this complaint to allege the additional specific facts when those facts become known to her, or to conform to proof at trial.

## FIFTH CAUSE OF ACTION AGAINST DEFENDANT CWS AND DOES 1-50
### NEGLIGENT SUPERVISION

74. LOGGINS repeats, realleges, and incorporates by reference each and every allegation contained in paragraphs 1 through 73 above as if fully set forth here against Defendant CWS and DOES 1-3.

75. LOGGINS continually notified the County of San Diego Supervisors, Deputy Directors, including Barry Fox, Patty Kay Danon and others about the actions of the employees of the County of San Diego.

76. LOGGINS continually notified the State of California Health and Human Services Agency regarding the actions of the State appointed Licensed Program Analysts assigned

to KELLOGGS and LOGGINS. No appropriate actions were taken by the State of California.

77. LOGGINS continually notified the State of California regarding the actions of the County of San Diego, more specifically Defendant CWS. No appropriate disciplinary actions were taken and no proper investigations were pursued.

78. By reason of Defendants' relationship that existed between them and LOGGINS, a duty of care was created defining how Defendants should treat LOGGINS. It was reasonably foreseeable that a breach of duty of care would cause Plaintiff damages.

79. As such, Defendants breached their duty of care to supervise their employees and respective government agencies regarding the actions that LOGGINS notified them of and complained of. On that basis LOGGINS alleges negligent supervision.

80. As a further proximate result of the above mentioned wrongful conduct of Defendants, LOGGINS had to hire counsel to pursue her legal rights, to LOGGINS damage in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION AGAINST DEFENDANTS CWS AND DOES 1-50
### COLLUSION

81. LOGGINS repeats, realleges, and incorporates by reference each and every allegation contained in paragraphs 1 through 80 above as if fully set forth here against Defendant CWS and DOES 1-3.

82. LOGGINS notified the State of California Health and Human Services Agency of the removal of clients without notice. In the State's response, Ms. Mei Yuk Kung, Acting

Program Administrator of the Statewide Childrenøs Residential Program, öf  Department of Social Services, is not responsible for, nor does it oversee, the placement of children in licensed facilities.ö However, LOGGINS is informed, believes and on that basis alleges that the State and County interact daily regarding placements and referrals. In addition, the State provides references to other agencies for placements occur, and make these references based on information from the County of San Diego.

83. LOGGINS is informed, believes and on that basis alleges that the state and county are misrepresenting the öindependenceö of their relationship in order to conspire against LOGGINS.

84. LOGGINS is informed, believes and on that basis alleges that the state and county are in fact dependent in their relationship not only to license individuals to legally operate group homes, but in the referral and placement process as well. This is done to make the bargaining process inherently unfair, to confuse the third party (in this case LOGGINS), and to deceive and mislead anyone who complains about the process.

85. Furthermore, the State does not require Defendant CWS to formalize the referral process in the matter of group homes, by charging them to publish written policies and procedures regarding the referral process. This results in disparate treatment, and the State colluding with the County to discourage protected classes from operating group homes.

86. As a direct, foreseeable and proximate result of the above mentioned actions by Defendants, and each of them, LOGGINS has suffered, and continues to suffer, losses in earnings, earning capacity and other benefits of employment, in an amount to be determined. LOGGINS will seek leave of court to amend this complaint to allege the exact amount of such damages, or to conform to proof at trial.

87. As a proximate result of Defendant's willful, knowing and intentional acts, LOGGINS has suffered, and continues to suffer humiliation, emotional distress and mental and physical pain and anguish, all to her damage, in an amount according to proof at trial.

88. The acts of Defendants were done with malice, fraud and oppression, and with conscious disregard for LOGGINS rights. Therefore, Defendant's actions entitle LOGGINS to punitive and exemplary damages in an amount sufficient to discourage such future actions of Defendants and others, and according to proof at trial.

89. LOGGINS is informed and believes, and on that basis alleges that Defendants engaged in other actionable conduct not enumerated by this complaint. LOGGINS will seek leave of court to amend this complaint to allege the additional specific facts when those facts become known to her, or to conform to proof at trial.

## **DEMAND FOR JURY**

90. Plaintiff respectfully requests that the claims made herein be heard by a jury.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff seeks judgment as follows:

1.  For compensatory, special and general damages according to proof at trial;

2.  For punitive damages in an amount sufficient to discourage such future discriminatory actions by Defendant and others, and in the Court's discretion;

3.  For injunctive relief to immediately refer clients to LOGGINS group home, as the court deems just and proper;

4.  For statutory damages as outlined within the complaint and as determined by the facts of this case;

5. For an award of reasonable attorneys' fees and costs of suit according to proof, and pursuant to 42 U.S.C. § 1988 and California Civil Code §§52 and 52.1;

6. For such other and further relief as the court deems just and proper.

**LAW OFFICES OF MONICA L. MONTGOMERY**

Date: _October 28, 2013_____

/s/ Monica Montgomery
Attorney for Plaintiff

JS 44   (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Dianne Loggins | County of San Diego Health and Human Services Agency, Child Welfare Services |

| (b) County of Residence of First Listed Plaintiff | San Diego | County of Residence of First Listed Defendant | San Diego |
|---|---|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | | *(IN U.S. PLAINTIFF CASES ONLY)* | |

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Monica L. Montgomery SBN257286
121 Broadway Suite 553 San Diego, CA 92101
(619) 255-1204

Attorneys *(If Known)*

**'13 CV 2615 JAH BLM**

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government
       Plaintiff
- ☒ 3   Federal Question
       *(U.S. Government Not a Party)*
- ☐ 2   U.S. Government
       Defendant
- ☐ 4   Diversity
       *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1   Original
       Proceeding
- ☐ 2   Removed from
       State Court
- ☐ 3   Remanded from
       Appellate Court
- ☐ 4   Reinstated or
       Reopened
- ☐ 5   Transferred from
       Another District
       *(specify)*
- ☐ 6   Multidistrict
       Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 1983
Brief description of cause:
Civil Rights - Violation of Due Process

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*

JUDGE _____   DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 10/28/2013 | /s/ Monica L. Montgomery |

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____